NOT YET SCHEDULED FOR ORAL ARGUMENT

# United States Court of Appeals for the District of Columbia Circuit

**No. 26-8001**

(Consolidated with 17-1111)

In re: DISTRICT OF COLUMBIA,

*Petitioner.*

*On Appeal from the United States District Court for the District of Columbia Case No. 24-cv-656, Hon. John D. Bates*

# BRIEF FOR *AMICI CURIAE* COUNCIL OF PARENT ATTORNEYS AND ADVOCATES, INC., NATIONAL CENTER FOR YOUTH LAW, NATIONAL DISABILITY RIGHTS NETWORK AND JUDGE DAVID L. BAZELON CENTER FOR MENTAL HEALTH LAW IN SUPPORT OF THE RESPONDENTS

ELLEN MARJORIE SAIDEMAN
LAW OFFICE OF ELLEN SAIDEMAN
7 Henry Drive
Barrington, Rhode Island 02806
(401) 258-7276
esaideman@yahoo.com

SELENE ALMAZAN-ALTOBELLI
COUNCIL OF PARENT ATTORNEYS AND ADVOCATES, INC.
P.O. Box 6767
Towson, Maryland 21212
(844) 426-7224
selene@copaa.org

*Counsel for Amici Curiae*

COUNSEL PRESS
A Proceed Service
The Appellate Experts®
(800) 4-APPEAL • (396575)

## CORPORATE DISCLOSURE STATEMENT

Pursuant to FRAP 26.1 the following disclosure is made on behalf of:

Council of Parent Attorneys and Advocates
National Disability Rights Network
National Center for Youth Law
Judge David L. Bazelon Center for Mental Health Law

1. No amicus is a publicly held corporation or other publicly held entity;
2. No amicus has parent corporations; and
3. No amicus has 10% or more of stock owned by a corporation.

Respectfully submitted,

*s/Selene Almazan-Altobelli*
SELENE ALMAZAN-ALTOBELLI
COUNCIL OF PARENT ATTORNEYS
AND ADVOCATES, INC.
P.O. Box 6767
Towson, MD 21285
selene@copaa.org
(844) 426-7224
Counsel for *Amici*

# TABLE OF CONTENTS


**Page**

TABLE OF AUTHORITIES .......... iv

GLOSSARY .......... x

STATEMENT OF INTEREST OF *AMICI CURIAE* .......... 1

SUMMARY OF ARGUMENT .......... 4

ARGUMENT .......... 5

I. IDEA, ADA, AND SECTION 504 ESTABLISH PROCEDURAL AND SUBSTANTIVE PROTECTIONS FOR STUDENTS WITH DISABILITIES .......... 6

A. IDEA Guarantees Free Appropriate Public Education Delivered Through an Individualized Education Program .......... 6

B. The ADA and Section 504 Independently Require Public Entities to Provide Equal Educational Opportunities to Students with Disabilities .......... 7

II. TRANSPORTATION IS A RELATED SERVICE THAT A DISTRICT MUST PROVIDE WHENEVER A STUDENT REQUIRES IT TO ACCESS FAPE .......... 9

A. IDEA and Its Implementing Regulations Define Transportation as a Related Service .......... 9

B. Where the IEP Team Determines That Transportation Is Necessary, the District Must Provide It, Including Equipment, Support, and Door-to-Door Service, at No Cost to the Parent .......... 10

III. IDEA AUTHORIZES SYSTEMIC, CLASS-WIDE INJUNCTIVE RELIEF FOR SYSTEMIC VIOLATIONS .......... 11

A. Rule 23 Applies of Its Own Force, and IDEA Contains No Exception to It .......... 12

B. Congress Has Repeatedly Reauthorized IDEA Against a Settled Backdrop of Class-Wide Relief .......... 13

IV. *WAL-MART* CONFIRMS THAT CERTIFICATION IS APPROPRIATE WHERE, AS HERE, A SINGLE SYSTEM-WIDE FAILURE INJURES EVERY CLASS MEMBER AND CAN BE REMEDIED BY A SINGLE INJUNCTION ............ 14

A. This Case Presents the System-Wide Policy and Practice That *Wal-Mart* Found Lacking .................................... 14

B. Courts Applying *Wal-Mart* Have Continued to Certify Classes Challenging System-Wide Failures ............................. 16

C. Differences in Class Members' Disabilities and Needed Supports Do Not Defeat Commonality in Disability Rights Cases ......................................................................... 17

D. Rule 23(b)(2) Permits Class-Wide Relief Even Where Individual Class Members Will Also Require Individualized Accommodations .............................................. 21

V. THE CLASS ACTION IS AN INDISPENSABLE TOOL FOR ENFORCING CIVIL RIGHTS IN THE FACE OF SYSTEMIC VIOLATIONS ................................................................. 22

CONCLUSION .......................................................................................... 26

## TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*A.J.T. v. Osseo Area School*,
605 U.S. 335 (2025) .......... 2

*Andre H. v. Ambach*,
104 F.R.D. 606 (S.D.N.Y. 1985) .......... 13

*Arlington Central School District Board of Education v. Murphy*,
548 U.S. 291 (2006) .......... 2

*Barr-Rhoderick v. Bd. of Educ.*,
2006 U.S. Dist. LEXIS 72527 (D.N.M. Apr. 11, 2006) .......... 13

*Blackman v. District of Columbia*,
328 F. Supp. 2d 36 (D.D.C. 2004) .......... 13

*Board of Education v. Tom F.*,
552 U.S. 1 (2007) .......... 2

*Brooklyn Ctr. for Independence of the Disabled v. Metro. Transp. Auth.*,
11 F.4th 55 (2021) .......... 20

*Burlington Sch. Comm. v. Dep't. of Educ.*,
471 U.S. 359 (1985) .......... 11

*C.P. v. New Jersey Dep't of Educ.*,
2022 U.S. Dist. LEXIS 148892 (D.N.J. Aug. 19, 2022) .......... 13, 17

*C.W. v. Nev. Dep't of Educ.*,
2025 U.S. Dist. LEXIS 183031 (D. Nev. Sept. 18, 2025) .......... 13

*Califano v. Yamasaki*,
442 U.S. 682 (1979) .......... 12

*Colbert v. Blagojevich*,
No. 07 C 4737, 2008 WL 4442597 (N.D. Ill., Sept. 29, 2008) .......... 19

*Cordero v. Pennsylvania Dep't of Educ.*,
795 F. Supp. 1352 (M.D. Pa. 1992) .......... 13

*Corey H. v. Board of Education of City of Chicago*,
995 F. Supp. 900 (N.D. Ill. 1998) .......... 11, 13

*D.D. v. N.Y. City Bd. of Educ.*,
2004 U.S. Dist.LEXIS 5189 (E.D.N.Y. Mar. 30, 2004), *rev'd in part on other grounds by*, 465 F.3d at 515 ....................13

*DL v. D.C.*,
713 F.3d 120 (D.C. Cir. 2013) .................... 19-20

*DL v. D.C.*,
860 F.3d 713 (D.C. Cir. 2017) .................... 5, 11, 13, 14, 16, 19, 20, 21

*Endrew F. v. Douglas County School District. RE-1*,
580 U.S. 386 (2017)....................2, 7

*Evans v. Evans*,
818 F. Supp. 1215 (N.D. Ind. 1993) ....................13

*Forest Grove School District v. T.A.*,
557 U.S. 230 (2009)....................2

*Fry v. Napoleon Community School*,
580 U.S. 154 (2017)....................2, 7

*Gaskin v. Pennsylvania*,
1995 U.S. Dist. LEXIS 8136, 1995 WL 355346 (E.D. Pa. June 12, 1995) ....................13

*General Telephone Co. of the Southwest v. Falcon*,
457 U.S. 147 (1982)....................15

*Halpern v. Wake Forest Univ. Health Scis.*,
669 F.3d 454 (4th Cir. 2012)....................8

*Henderson v. Thomas*,
No. 2:11CV224–MHT WO, 2012 WL 3777146 (M.D. Ala. Aug. 30, 2012) ....................18

*In re Conklin*,
946 F.2d 306 (4th Cir. 1991)....................6

*J.G. ex rel F.B. v. Mills*,
2010 WL 5621274 (E.D.N.Y. Dec. 28, 2010), report and recommendation adopted, 2011 WL 239821 (E.D.N.Y. Jan. 24, 2011) ....................13

*J.N. v. Or. Dep't of Educ.*,
338 F.R.D. 256 (D. Or. 2021) .................... 13, 17

*J.S. v. Attica Cent. Schs.*,
2006 U.S. Dist. LEXIS 12827 (W.D.N.Y. Mar. 7, 2006), 2006 WL 581187 (W.D.N.Y. Mar. 7, 2006)....13

*Johnson v. Charlotte-Mecklenburg Sch. Bd. of Educ.*,
20 F.4th 835 (4th Cir. 2021)....7

*Jones v. Schneider*,
896 F. Supp. 488 (D.V.I. 1995)....13

*L.B. v. S.D. Unified Sch. Dist.*,
168 F.4th 1150 (2026)....7

*L.M.P. ex rel. E.P. v. Sch. Bd*,
516 F. Supp. 2d 1294 (S.D. Fla. 2007)....13

*Lane v. Kitzhaber*,
No. 3:12-cv-00138-ST, 2012 WL 3322680 (D. Or. Aug. 6. 2012).... 17, 18

*Ligas v. Maram*,
No. 05 C 4331 (N.D. Ill., Mar. 7, 2006), 2006 WL 644474....18

*Louis M. v. Ambach*,
113 F.R.D. 133 (N.D.N.Y. 1986)....13

*LV v. N.Y. City Dep't of Educ.*,
2005 U.S. Dist. LEXIS 20672 (S.D.N.Y. Sept. 15, 2005)....13

*M.F. ex rel. Ferrer v. N.Y.C. Dep't of Educ.*,
2019 WL 2511874 (E.D.N.Y. June 18, 2019)....14

*Pashby v. Cansler*,
279 F.R.D. 347 (E.D.N.C. 2011)....18

*Perez v. Sturgis Public Schools*,
598 U.S. 142 (2023)....2

*Petties v. D.C.*,
662 F.3d 564 (D.C. Cir. 2011)....13

*Petties v. District of Columbia*,
881 F. Supp. 63 (D.D.C. 1995)....13

*Reusch v. Fountain*,
1994 WL 794754 (D. Md. Dec. 29, 1994)....13

*Robertson v. D.C.*,
762 F. Supp. 3d 34 (D.D.C. 2025) ....................................................................8

*Robertson v. D.C.*,
816 F. Supp. 3d 77 (D.D.C. 2026) ....................................................................5

*Schaffer v. Weast*,
546 U.S. 49 (2005)........................................................................................2

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
559 U.S. 393 (2010)......................................................................................12

*T.B., Jr. by & through T.B., Sr. v. Prince George's Cty. Bd. of Educ.*,
897 F.3d 566 (4th Cir. 2018) .........................................................................6

*Teamsters v. United States*,
431 U.S. 324 (1977)......................................................................................15

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011)................................................................ 6, 14-20, 24

*Winkelman v. Parma City School District*,
550 U.S. 516 (2007)........................................................................................2

**Statutes and Other Authorities:**

8 U.S.C. § 1252(e) ..........................................................................................12

20 U.S.C. § 1400 ........................................ 1, 2, 4-7, 9-14, 16, 17, 19-21, 25, 26

20 U.S.C. § 1400(c)(1).........................................................................................2

20 U.S.C. § 1401 (26) ........................................................................................9

20 U.S.C. § 1412 ..............................................................................................6

20 U.S.C. § 1415 ............................................................................................11

20 U.S.C. § 1415(i)(2)(c)(iii)(2006) ...................................................................11

29 U.S.C. § 794 .................................................................. 1, 4-9, 14, 16, 17, 20, 26

42 U.S.C. § 12101 .............................................................. 1, 4-9, 14, 16, 17, 20, 26

42 U.S.C. § 1983 ..............................................................................................1

42 U.S.C. § 12131 ............................................................................................8

42 U.S.C. § 12132 ........................................................................................8, 9

28 C.F.R. § 35.130 ....9
34 C.F.R. § 104.4(b)(1)(ii) ....9
34 C.F.R. § 104.4(b)(1)(iii) ....9
34 C.F.R. § 104.4(b)(1)(iv) ....9
34 C.F.R. § 104.4(b)(1)(v) ....9
34 C.F.R. § 104.4(b)(4) ....9
34 C.F.R. § 300.17 ....7
34 C.F.R. § 300.34(c) ....9
34 C.F.R. § 300.34(c) (16) ....10
34 C.F.R. § 300.320–300.324 ....7
71 Fed. Reg. 46576 (2006) ....10
Fed. R. App. P. 29(a)(4)(E) ....1
Fed. R. App. P. 32(a)(6) ....26
Fed. R. App. P. 32(a)(7)(B)(iii) ....26
Fed. R. Civ. P. 1 ....12
Fed. R. Civ. P. 23 .... 12, 14, 15, 22, 24
Fed. R. Civ. P. 23(a) ....15
Fed. R. Civ. P. 23 (b)(2) .... 20-23, 25

A. Benjamin Spencer, *Class Actions, Heightened Commonality, and Declining Access to Justice*, 93 B.U. L. Rev. 441 (2013) ....24

Abbe Petuchowski, *Beyond the Point of Exhaustion: Reforming the Exhaustion Requirement to Protect Access to IDEA Rights in Juvenile Facilities*, 56 Colum. J.L. & Soc. Probs. (2022) ....25

David Marcus, *Flawed but Noble: Desegregation Litigation and Its Implications for the Modern Class Action*, 63 Fla. L. Rev. 657 (2011) ....22

David Marcus, *Groups and Rights in Institutional Reform Litigation*, 97 Notre Dame L. Rev. 619 (2022) ....24

Eloise Pasachoff, *Special Education, Poverty, and the Limits of Private Enforcement*, 86 Notre Dame L. Rev. 1413 (2011) ............................................25

Maureen Carroll, *Class Actions, Indivisibility, and Rule 23(b)(2)*, 99 B.U. L. Rev. 59 (2019)....................................................................................23

Steven Schwartz & Kathryn Rucker, *The Commonality of Difference: A Framework for Obtaining Class Certification in ADA Cases After Wal-Mart*, 71 Syracuse L. Rev. 841 (2021) .......................................................24

Suzette M. Malveaux, *The Modern Class Action Rule: Its Civil Rights Roots and Relevance Today*, 66 U. Kan. L. Rev. 325 (2017) ....................... 22-23

# GLOSSARY

ADA: Americans with Disabilities Act, *et seq*., 42 U.S.C. 12101, *et seq*.

Bazelon Center: The Judge David L. Bazelon Center for Mental Health Law

CAP: Client Assistance Program

COPAA: Council of Parent Attorneys and Advocates

FAPE: Free and Appropriate Public Education

IDEA: Individuals with Disabilities Education Act, 20 U.S.C. § 1400, *et seq*.

IEP : Individualized Education Program

NCYL: The National Center for Youth Law

NDRN: The National Disability Rights Network

P&A: Protection and Advocacy

SECTION 504: Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794

The Act: Individuals with Disabilities Education Act, 20 U.S.C. § 1400, *et seq*.

## STATEMENT OF INTEREST OF *AMICI CURIAE*[1]

**Council of Parent Attorneys and Advocates (COPAA)** is a national not-for-profit organization for parents of children with disabilities, their attorneys and advocates. COPAA believes effective educational programs for children with disabilities can only be developed and implemented with collaboration between parents and educators as equal parties.

COPAA's attorney members represent children in matters involving the Individuals with Disabilities Education Act, 20 U.S.C. § 1400, *et seq*. (IDEA or Act). COPAA also supports individuals with disabilities, their parents, and advocates, in seeking to safeguard the civil rights guaranteed to those individuals under federal laws, including the Civil Rights Act of 1871, ch. 22, 17 Stat. 13 (codified as amended at 42 U.S.C. § 1983) (Section 1983), Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 (Section 504), and the Americans with Disabilities Act, *et seq*., 42 U.S.C. 12101, *et seq*. (ADA).

COPAA's primary goal is to secure appropriate educational services for children with disabilities in accordance with national policy. COPAA provides

[1] Pursuant to Rule 29(a)(4)(E) of the Federal Rules of Appellate Procedure, *Amici* states that: (A) there is no party, or counsel for a party in the pending appeal who authored the *amicus* brief in whole or in part; (B) there is no party or counsel for a party in the pending appeal who contributed money that was intended to fund preparing or submitting the brief; and (C) no person or entity contributed money that was intended to fund preparing or submitting the brief, other than *Amici* and its members.

resources, training, and information for parents, advocates, and attorneys to assist them in obtaining the free appropriate public education (FAPE) such children are entitled to under the IDEA.[2]

COPAA brings to the Court the unique perspective of parents, advocates, and attorneys for children with disabilities. COPAA has previously filed as *amicus curiae* in the United States Supreme Court in *A.J.T. v. Osseo Area School*, 605 U.S. 335 (2025); *Perez v. Sturgis Public Schools,* 598 U.S. 142 (2023); *Endrew F. v. Douglas County School District. RE-1*, 580 U.S. 386 (2017); *Fry v. Napoleon Community School,* 580 U.S. 154 (2017); *Forest Grove School District v. T.A.*, 557 U.S. 230 (2009)*; Board of Education v. Tom F.*, 552 U.S. 1 (2007)*; Winkelman v. Parma City School District,* 550 U.S. 516 (2007), and *Arlington Central School District Board of Education v. Murphy*, 548 U.S. 291 (2006)*; Schaffer v. Weast*, 546 U.S. 49 (2005)*,* and in numerous cases in the United States Courts of Appeal.

**The Judge David L. Bazelon Center for Mental Health Law (Bazelon Center)**, is a non-profit legal advocacy organization dedicated to advancing the rights of people with disabilities, including mental disabilities, for over five decades.

---

[2] "Improving educational results for children with disabilities is an essential element of [the U.S.] national policy of ensuring equality of opportunity, full participation, independent living, and economic self-sufficiency for individuals with disabilities." 20 U.S.C. § 1400(c)(1).

Ensuring that children with disabilities are provided with equal educational opportunities is a central part of the Bazelon Center's mission.

**The National Center for Youth Law (NCYL)** is a private, nonprofit legal organization that works to fundamentally transform our nation's approach to education, health, immigration, family regulation, and youth justice. For over 50 years, the National Center for Youth Law has worked side-by-side with children and youth to ensure that they have the resources, support, and opportunities they need to become self-sufficient adults. NCYL represents students with disabilities in litigation and class administrative complaints to ensure their access to appropriate, nondiscriminatory and inclusive education. NCYL also engages in legislative and administrative advocacy to provide children and youth a voice in policy decisions that impact their lives.

**The National Disability Rights Network (NDRN)** is the non-profit membership organization for the federally mandated Protection and Advocacy (P&A) and Client Assistance Program (CAP) agencies for individuals with disabilities. The P&A and CAP agencies were established by the United States Congress to protect the rights of people with disabilities and their families through legal support, advocacy, referral, and education. There are P&As and CAPs in all 50 states, the District of Columbia, Puerto Rico, and the U.S. Territories (American Samoa, Guam, Northern Mariana Islands, and the US Virgin Islands), and there is a

P&A and CAP affiliated with the Native American Consortium which includes the Hopi, Navajo and San Juan Southern Paiute Nations in the Four Corners region of the Southwest. Collectively, the P&A and CAP agencies are the largest provider of legally based advocacy services to people with disabilities in the United States.

Both parties have given consent for the filing of this *amici* brief.

## SUMMARY OF ARGUMENT

Systemic problems require systemic solutions. A systemic remedy is critical here because the District of Columbia Public Schools (District) fails to provide adequate and timely transportation services across its program of transportation for students with disabilities who require such services to attend school. As a result of the District's widespread transportation failures, students with disabilities are unable to access a Free and Appropriate Public Education (FAPE) as required by IDEA, and they are denied equal access to an education as required by the ADA and Section 504. As the District Court found, this problem is program-wide and requires the sort of systemic resolution that can only be achieved through a class-wide injunction.

All of the students in the class have education plans that require the District to provide transportation. While their individual disability-related needs may differ, they all rely on the District's transportation to get to and from school, and the District's widespread failure to provide such transportation on a safe and reliable

basis is a common practice that impacts them all. well-established. Accordingly, their claims meet the requirements for class certification.

The District's widespread failure to provide safe and reliable transportation to school has dire consequences. To start, it means that students with disabilities in the District cannot access FAPE when they cannot get to school. But that is just the beginning. Failing to comply with the IDEA, ADA, and Section 504's requirements can change the life trajectory of the most at-risk students. That includes diverting children from potential success to a cycle of poverty and recidivism. As the district court properly found, the District's transportation failures are not merely individual, but are class wide. The district court did not abuse its discretion when it certified the class.

## ARGUMENT

This Court reviews a district court's decision to certify a class, "conservatively . . . to ensure against abuse of discretion or erroneous application of legal criteria." *DL v. D.C.*, 860 F.3d 713, 723 (D.C. Cir. 2017). A district court exercises "broad discretion in deciding whether to permit a case to proceed as a class action," subject to the "rigorous analysis" Rule 23 requires. See also *Robertson v. D.C.*, 816 F. Supp. 3d 77, 87 (D.D.C. 2026). The district court properly conducted that analysis here, and its order should be affirmed.

This brief proceeds in four parts. Part I sets out the framework of procedural and substantive protections that IDEA, the ADA, and Section 504 establish for

students with disabilities. Part II explains that transportation is a related service a district must provide whenever a student requires it to access FAPE. Part III demonstrates that the IDEA authorizes systemic, class-wide injunctive relief when a district's failures are themselves systemic. And Part IV explains that *Wal-Mart Stores, Inc. v. Dukes* supports, rather than forecloses, certification in a case like this one, where a single system-wide failure injures every class member and can be remedied by a single injunction.

## I. IDEA, ADA, AND SECTION 504 ESTABLISH PROCEDURAL AND SUBSTANTIVE PROTECTIONS FOR STUDENTS WITH DISABILITIES.

Collectively, the IDEA, ADA, and Section 504 of the Rehabilitation Act establish a framework to protect students with disabilities. In turn, the Supreme Court and this Court have further refined and clarified those requirements.

### A. IDEA Guarantees Free Appropriate Public Education Delivered Through an Individualized Education Program

"The IDEA was enacted 'to throw open the doors of public education and heed the needs' of students with disabilities who had for too long been 'either completely ignored or improperly serviced by American public schools.'" *T.B., Jr. by & through T.B., Sr. v. Prince George's Cty. Bd. of Educ.*, 897 F.3d 566, 571 (4th Cir. 2018) (citing *In re Conklin*, 946 F.2d 306, 307 (4th Cir. 1991)). IDEA does this by providing states with the funding to educate students with disabilities and conditioning it on meeting substantive education requirements. 20 U.S.C. § 1412.

IDEA is a model of cooperative federalism and leaves to the states the primary responsibility for developing and executing educational programs for children with disabilities but imposes significant requirements to be followed in the discharge of that responsibility. *L.B. v. S.D. Unified Sch. Dist.*, 168 F.4th 1150, 1154 (2026). The cornerstone of this responsibility is the statutory right to FAPE, which is guaranteed to *all* students with disabilities. It assures "'meaningful access to education based on [the student's] individual needs,' and includes 'both instruction tailored to meet a child's unique needs and sufficient supportive services to permit the child to benefit from that instruction.'" *Johnson v. Charlotte-Mecklenburg Sch. Bd. of Educ.*, 20 F.4th 835, 839 (4th Cir. 2021) (quoting *Fry v. Napoleon Cmty. Schs.*, 137 S. Ct. 743, 748–49, 753–54 (2017)).

Schools provide FAPE through an appropriately developed IEP that is based on the student's individual needs and is "reasonably calculated" to enable the student "to make progress appropriate" to their circumstances. *See Endrew F. ex rel. Joseph F. v. Douglas Cty. Sch. Dist. RE-1*, 580 U.S. at 402; 34 C.F.R. §§ 300.17; 300.320–300.324.

### B. The ADA and Section 504 Independently Require Public Entities to Provide Equal Educational Opportunities to Students with Disabilities

The ADA and Section 504 of the Rehabilitation Act also protect students with disabilities. Title II of the ADA forbids any "public entity" from discriminating

based on disability, 42 U.S.C. § 12131, while Section 504 applies the same prohibition to any federally funded "program or activity," 29 U.S.C. § 794. More specifically, Section 504 provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794. And the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Although the two statutes use different language, courts typically "construe the ADA and Rehabilitation Act to impose similar requirements." *Halpern v. Wake Forest Univ. Health Scis.*, 669 F.3d 454, 461 (4th Cir. 2012).

These statutes prohibit disability-based discrimination, including the denial of an equal opportunity to benefit from a public education and retaliation. The district court sustained plaintiffs' discrimination claims on precisely that theory, holding that the District's transportation failures deny students with disabilities "an educational opportunity that is equal to the opportunity afforded other children." *Robertson v. D.C.*, 762 F. Supp. 3d 34, 57 (D.D.C. 2025). Because transportation is the essential means by which these students reach school, and because they—unlike

their non-disabled peers—must depend on the District to provide it, the District's systemic failures fall within the core prohibitions of the ADA and Section 504. 42 U.S.C. § 12132; 29 U.S.C. § 794. "Structuring education services in a way that results in, aids, or perpetuates discrimination against students with disabilities is prohibited." 28 C.F.R. § 35.130; 34 C.F.R. § 104.4(b)(1)(ii), (iii), and (iv) and (v), (b)(4).

Rather than comply with these procedural and substantive safeguards, the District failed to meet its burden of providing the necessary services needed for DC students to receive FAPE. Because the District's district-wide failure to provide transportation denied students with disabilities FAPE, the district court did not err in granting class certification. It certainly did not abuse its discretion in granting class certification, and the certification should be affirmed.

## II. TRANSPORTATION IS A RELATED SERVICE THAT A DISTRICT MUST PROVIDE WHENEVER A STUDENT REQUIRES IT TO ACCESS FAPE.

### A. IDEA and Its Implementing Regulations Define Transportation as a Related Service.

IDEA specifically provides that the term "related services" means "transportation and such developmental, corrective, and other supportive services as are required to assist a child with a disability to benefit from special education." 34 C.F.R. § 300.34(c). "Transportation" falls within the definition of "related services" that must be provided under IDEA. 20 U.S.C. § 1401 (26). IDEA regulations from

the U.S. Department of Education define "transportation" to include: (1) travel to and from school and between schools; (2) travel in and around school buildings; and, (3) specialized equipment (such as special or adapted buses, lifts, and ramps), if required to provide special transportation for a child with a disability. 34 C.F.R. § 300.34(c) (16).

### B. Where the IEP Team Determines That Transportation Is Necessary, the District Must Provide It, Including Equipment, Support, and Door-to-Door Service, at No Cost to the Parent

Under IDEA, a student's IEP is developed to meet the student's unique educational needs, and it is through that individualized process that the services a student requires—including transportation—are identified. If the IEP Team determines that a child with a disability requires transportation as a related service in order to receive FAPE, the child "*must receive the necessary transportation or supports at no cost to the parents.*" 71 Fed. Reg. 46576 (2006) (emphasis added).

When the IEP team determines that a child needs additional equipment or accommodations for transportation, the district must also provide those items and adjustments. Accommodations or equipment might include a harness, a lift, restraints, a seatbelt, a car seat, a ramp, a transportation aide, or door-to-door transportation, among other things; regardless, it is the district's responsibility to provide suitable equipment and support that are required to safely transport a student to and from school.

## III. IDEA AUTHORIZES SYSTEMIC, CLASS-WIDE INJUNCTIVE RELIEF FOR SYSTEMIC VIOLATIONS.

IDEA guarantees children with disabilities FAPE. 20 U.S.C. § 1400, *et seq.* To ensure that children with disabilities get appropriate services, parents have the right to participate in their child's educational planning and may pursue administrative remedies if they believe the local education agency ("LEA") is failing to provide needed services and supports. 20 U.S.C. § 1415. In most instances, the administrative process results in a resolution of the dispute. If it does not, the parents may seek judicial relief and as expressly authorized by Congress, a court may grant "such relief as [it] determines is appropriate" 20 U.S.C. § 1415(i)(2)(c)(iii)(2006); *see also Burlington Sch. Comm. v. Dep't. of Educ.*, 471 U.S. 359, 369 (1985). Courts enforcing IDEA have clearly and repeatedly found that class-wide and systemic injunctive relief is appropriate under this civil rights statute. *DL v. District of Columbia*, 860 F.3d 713 (D.C. Cir. 2017) (D.C. Circuit affirmed the certification of subclasses and a comprehensive class-wide injunction to remedy systemic failures within the district's "Child Find" tracking and evaluation program), *Corey H. v. Board of Education of City of Chicago*, 995 F. Supp. 900 (N.D. Ill. 1998)) (The court found systemic violations of the IDEA's Least Restrictive Environment (LRE) mandate. It entered extensive, class-wide injunctive orders.).

### A. Rule 23 Applies of Its Own Force, and IDEA Contains No Exception to It.

That Congress did not explicitly provide for class-based relief under IDEA is of no consequence. An express provision was not needed because "like the rest of the Federal Rules of Civil Procedure, Rule 23 *automatically* applies 'in all civil actions and proceedings in the United States district courts.'" *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 400 (2010) (citing Fed. R. Civ. P. 1 and *Califano v. Yamasaki*, 442 U.S. 682, 699-700 (1979)); *id.* at 406 ("Rule 23 unambiguously authorizes *any* plaintiff, in *any* federal civil proceeding, to maintain a class action if the Rule's prerequisites are met."); *id.* at 400 ("Congress . . . has ultimate authority over the Federal Rules of Civil Procedure; it can create exceptions to an individual rule as it sees fit—either by directly amending the rule or by enacting a separate statute overriding it in certain instances.").

Where Congress intends to create an exception to Rule 23, it has done so explicitly. *See, e.g.,* 8 U.S.C. § 1252(e) (provision of the Immigration and Nationality Act under which "*no court may [] certify a class under Rule 23*… in any action for which judicial review is authorized under a subsequent paragraph of this subsection") (emphasis added). No such exception exists in IDEA, allowing plaintiffs to maintain a class action under IDEA provided they meet the requirements of Rule 23.

### B. Congress Has Repeatedly Reauthorized IDEA Against a Settled Backdrop of Class-Wide Relief

Moreover, Congress has repeatedly reauthorized IDEA knowing that courts have long recognized the availability of class-wide and systemic injunctive relief under the Act, as well as the right of plaintiffs to challenge systemic violations of IDEA through class actions.[3] Indeed, this Court has heard IDEA class actions and never suggested that class relief was unavailable under the IDEA. *See, e.g.*, *Petties v. D.C.*, 662 F.3d 564 (D.C. Cir. 2011) (injunction issued in class action remanded

---

[3] *See*, *e.g.*, the following cases in which courts have certified class actions under the IDEA: *D.L. v. District of Columbia*, 860 F.3d 713 (D.C. Cir. 2017); *C.P. v. New Jersey Dep't of Educ.*, 2022 U.S. Dist. LEXIS 148892 (D.N.J. Aug. 19, 2022); *J.N. v. Or. Dep't of Educ.*, 338 F.R.D. 256 (D. Or. 2021); *J.G. ex rel F.B. v. Mills*, 2010 WL 5621274, *1, 5 (E.D.N.Y. Dec. 28, 2010), report and recommendation adopted, 2011 WL 239821 (E.D.N.Y. Jan. 24, 2011); *Barr-Rhoderick v. Bd. of Educ.*, 2006 U.S. Dist. LEXIS 72527 (D.N.M. Apr. 11, 2006); *J.S. v. Attica Cent. Schs.,* 2006 U.S. Dist. LEXIS 12827, 2006 WL 581187 (W.D.N.Y. Mar. 7, 2006); *LV v. N.Y. City Dep't of Educ.*, 2005 U.S. Dist. LEXIS 20672 (S.D.N.Y. Sept. 15, 2005); *D.D. v. N.Y. City Bd. of Educ.*, 2004 U.S. Dist.LEXIS 5189 (E.D.N.Y. Mar. 30, 2004) *rev'd in part on other grounds by* 465 F.3d at 515; *Blackman v. District of Columbia*, 328 F. Supp. 2d 36 (D.D.C. 2004); *Corey H. ex rel. Shirley P. v. Bd. of Educ.*, 995 F. Supp. 900 (N.D. Ill. 1998); *Gaskin v. Pennsylvania*, 1995 U.S. Dist. LEXIS 8136, 1995 WL 355346 (E.D. Pa. June 12, 1995); *Petties v. District of Columbia*, 881 F. Supp. 63 (D.D.C. 1995); *Jones v. Schneider*, 896 F. Supp. 488 (D.V.I. 1995); *Reusch v. Fountain*¸ 1994 WL 794754 (D. Md. Dec. 29, 1994); *Evans v. Evans*, 818 F. Supp. 1215 (N.D. Ind.1993); *Cordero v. Pennsylvania Dep't of Educ.*, 795 F. Supp. 1352 (M.D. Pa. 1992); *Louis M. v. Ambach*, 113 F.R.D. 133 (N.D.N.Y. 1986); *Andre H. v. Ambach*, 104 F.R.D. 606 (S.D.N.Y. 1985). Courts have also denied motions to dismiss alleging class-based claims. *C.W. v. Nev. Dep't of Educ.*, 2025 U.S. Dist. LEXIS 183031 (D. Nev. Sept. 18, 2025); *L.M.P. ex rel. E.P. v. Sch. Bd*, 516 F. Supp. 2d 1294, 1304 (S.D. Fla. 2007) (denying motion to dismiss class claims and noting "claims of generalized violations of the IDEA lend themselves well to class action treatment").

for further inquiry). Most significantly, this Court has twice reviewed the certification of systemic IDEA classes against the District on the merits, affirming certification in *DL v. District of Columbia* without any suggestion that Rule 23 is unavailable to enforce the IDEA. 860 F.3d 713 (D.C. Cir. 2017). To the contrary, this Court has recognized that "for decades, courts across the country" have "order[ed] or approv[ed] structural relief when IDEA violations required it." *Id*. at 731. *See also M.F. ex rel. Ferrer v. N.Y.C. Dep't of Educ.*, 2019 WL 2511874, at *7 (E.D.N.Y. June 18, 2019) (Section 504 class).

## IV. *WAL-MART* CONFIRMS THAT CERTIFICATION IS APPROPRIATE WHERE, AS HERE, A SINGLE SYSTEM-WIDE FAILURE INJURES EVERY CLASS MEMBER AND CAN BE REMEDIED BY A SINGLE INJUNCTION.

*Wal-Mart* supports certification in the instant case because there is a system-wide failure that affects and injures each class member. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).

### A. This Case Presents the System-Wide Policy and Practice That *Wal-Mart* Found Lacking

In *Wal-Mart*, a unique case involving "one of the most expansive class actions ever," the one-million-plus plaintiffs were current and former store employees allegedly paid too little and/or not promoted, among other injuries, based on their gender. *Id.* at 342. They complained of quite diverse intentional violations of Title VII, including biased hiring practices and retaliation. *Id.* at 343. *Wal-Mart* followed

settled authority articulating proof standards for Rule 23(a) commonality first established in employment discrimination decisions. In particular, the Supreme Court relied on *General Telephone Co. of the Southwest v. Falcon,* 457 U.S. 147 (1982). The Court recognized that to "bridg[e]" the "conceptual gap" between individual discrimination claims and assertions of common, class-wide injury, a plaintiff class must present "significant proof" that defendants "operated under a general policy of discrimination." *Wal-Mart*, 564 U.S. at 353 (quoting *Falcon*, 457 U.S. at 159 n.15). The Court also stated that the *Wal-Mart* plaintiffs' institution-wide discrimination claim "necessarily overlaps with their merits contention that Wal-Mart engaged in a *pattern or practice* of discrimination." *Id.* at 352 (emphasis in original) (citation modified). Plaintiffs' task was to "establish by a preponderance of the evidence that . . . discrimination was the company's standard operating procedure, the regular rather than the unusual practice," *id.* at 352 n.7 (citation modified) (quoting *Teamsters v. United States*, 431 U.S. 324, 336 (1977)). The Court concluded that the Wal-Mart plaintiffs could not meet the commonality requirement of Rule 23 because there was no institution-wide discriminatory policy or practice satisfying Title VII's proof requirements – no "glue" holding the class together – and the plaintiffs' allegations could not be uniformly adjudicated in ways applicable to the entire class. *Id.* at 2548-52.

In direct contrast to *Wal-Mart*, this case hinges on District-wide policies and practices that violate the IDEA, ADA, and Section 504. The core of plaintiffs' case is this single claim of system-wide malfeasance, not, as in *Wal-Mart*, simply an amalgam of individualized violations. Rather, the "glue" holding the class together is the systemic default of Defendants' transportation system, an injury that could be remedied with "a single injunction or declaratory judgment." 564 U.S. at 360. That students may vary in their specific accommodation needs or in the ways they have experienced transportation failures, they all rely on transportation to get to school and they have all been impacted by the District's failure to provide safe and reliable transportation.

Indeed, the crux of *Wal-Mart* was "literally millions of employment decisions" that plaintiffs sought to adjudicate "at once." *Id.* at 358 n.9. By contrast, the District's liability under IDEA does not hinge on the validity of diverse student-specific decisions, but instead, on a determination of whether "[a]ll of the class members have suffered the same injury" by virtue of the District's system-wide failure to implement transportation that is reliable and serves the needs of the students, an injury which the plaintiffs have amply demonstrated.

### B. Courts Applying *Wal-Mart* Have Continued to Certify Classes Challenging System-Wide Failures.

Many other courts have interpreted *Wal-Mart* in the same manner. *D.L. v. District of Columbia*, 860 F.3d 713 (D.C. Cir. 2017) (D.C. Circuit affirmed the

certification of subclasses and a comprehensive class-wide injunction to remedy systemic failures within the district's "Child Find" tracking and evaluation program); *C.P. v. New Jersey Dep't of Educ.*, 2022 U.S. Dist. LEXIS 148892 (D.N.J. Aug. 19, 2022) ((Class certification granted where state's failure to decide due process claims within IDEA's 45-day timeframe was widespread); *J.N. v. Or. Dep't of Educ.*, 338 F.R.D. 256 (D. Or. 2021)(class certification granted in IDEA, ADA and Section 504 case, where lack of state-level monitoring, enforcement, and assistance for school districts led to a statewide pattern among school districts of misusing shortened school day schedules for students with disability-related behaviors).

### C. Differences in Class Members' Disabilities and Needed Supports Do Not Defeat Commonality in Disability Rights Cases.

Similar cases further demonstrate that each class member need not share the exact disabilities, needs, and circumstances for class-wide adjudication to be appropriate and class-wide relief to be essential. For example, in *Lane v. Kitzhaber,* No. 3:12-cv-00138-ST, 2012 WL 3322680 (D. Or. Aug. 6. 2012), named plaintiffs sought to certify a class of those "'who are in, or who have been referred to, sheltered workshops' and 'who are qualified for supported employment services.'" *Lane,* 2012 WL 3322680 at *1. As here, Oregon officials argued that *Wal-Mart* changed the landscape for civil rights class actions such that commonality was lacking because the case called for individualized inquiries about class members' disabilities and

accommodations. *Id.* at *7. The court disagreed, concluding that common questions regarding the overall legitimacy of the state's practices predominated, including "whether defendants have failed to plan, administer, operate and fund a system that provides employment services that allow persons with disabilities to work in the most integrated setting." *Id.* at *10. The court went on to conclude that "[a]s required by *Wal–Mart*, this class action can be resolved 'in one stroke' with an appropriate injunction applicable to all class members." *Id*. at *15. Similarly, in *Pashby v. Cansler*, 279 F.R.D. 347 (E.D.N.C. 2011), the court certified a class of plaintiffs with disabilities who challenged the State's termination of in-home personal care services via implementation of more restrictive eligibility rules. *Id.* at 351, 354. The court concluded that plaintiffs had shown a common contention that "will resolve the claims of all potential plaintiffs, irrespective of their particular factual circumstances." *Id*. at 353; *see also Henderson v. Thomas*, No. 2:11CV224–MHT WO, 2012 WL 3777146, at *5 (M.D. Ala. Aug. 30, 2012) ("[T]he named plaintiffs' legal claim – that the defendants are engaged in disability discrimination in violation of the ADA and Rehabilitation Act – is identical to the class's claims."); *Ligas v. Maram,* No. 05 C 4331 (N.D. Ill., Mar. 7, 2006), 2006 WL 644474, at *3 (reasoning that individual's knowledge of programs or readiness for transition does not affect commonality when "the proposed class is challenging the defendants' failure to enact policies regarding community placement.").

The individualized nature of disability is not mutually exclusive with the holding of *Wal-Mart*. In *Colbert v. Blagojevich*, No. 07 C 4737, 2008 WL 4442597 (N.D. Ill., Sept. 29, 2008), a class of Medicaid beneficiaries with disabilities in nursing homes claimed that despite the fact they could live in their own homes, the state failed to provide them necessary services in a more integrated setting. The class consisted of "all Medicaid-eligible adults with disabilities in Cook County, Illinois, who are being, or may in the future be, unnecessarily confined to nursing facilities and who, with appropriate supports and services, may be able to live in a community setting." *Id.* at *2. The consent decree ordered defendants to develop sufficient services to transition people into the community. Consent Decree § V, Aug. 29, 2011. The fact that class members with various needs would require individualized support plans was contemplated throughout the litigation and addressed by both parties in the consent order and did not undermine, much less preclude, class certification.

This Court has already applied *Wal-Mart v. Dukes* to systemic IDEA class actions against the District—twice—and those decisions control. In *DL v. District of Columbia*, the Court first held that a class defined only by the District's "pattern and practice of failing to provide FAPEs" swept too broadly, because alleging a shared "violation of the same provision of law" does not establish commonality where a statute "can be violated in many different ways." *DL v. D.C.*, 713 F.3d 120,

127 (D.C. Cir. 2013) relying on *Walmart,* 131 S. Ct. 2541 (2011). But the Court was equally clear that "widespread policies and practices in violation of the IDEA "*can* satisfy Rule 23(a)(2), so long as plaintiffs identify "a single or uniform policy or practice that bridges all their claims." *Id.* On remand, the district court certified subclasses tied to discrete stages of the process, and this Court affirmed.

*DL* resolves the District's central argument here. The Court identified "a significant distinction between *Wal-Mart v. Dukes* and this case": in Title VII, "the crux of the inquiry is the *reason* for a particular employment decision," so the differing reasons behind millions of decisions defeated commonality. *DL*, 860 F.3d at 724. IDEA liability is different. It "does not depend on the reason for a defendant's failure," and plaintiffs "need not show why their rights were denied to establish that they were." *Id.* at 725. *Wal-Mart*'s commonality analysis "thus has limited relevance here." *Id.* In *DL*, as here, each subclass instead shared a "common harm," "susceptible to common proof, and curable by a single injunction." *Id.*

The transportation class is materially identical.[4] Its members share a common harm—the denial of the reliable, IEP-mandated transportation the District is obligated to provide—that can be proven with common evidence of systemic failure

[4] *See also, Brooklyn Ctr. for Independence of the Disabled v. Metro. Transp. Auth.,* 11 F.4th 55 (2021)(class of people with impaired mobility alleging New York City violated the ADA and Section 504 by failing to repair subway elevator system was certified because, despite their individualized accessibility needs, they all rely on elevators to access the New York City subway system).

and remedied through a single, class-wide injunction. Because IDEA liability turns on whether the District failed to deliver the transportation its own IEPs require, and not on *why* it failed, the individualized "reasons" and remedial variations the District emphasizes do not defeat commonality or cohesiveness. This Court has likewise rejected the District's recurring contention that the IDEA permits only individualized relief: where plaintiffs "challenge systemic defects" in the District's policies, those defects "can only be remedied by a comprehensive injunction," *Id.* at 731, and Rule 23(b)(2) "was designed for exactly this sort of suit." *Id.* at 726.

### D. Rule 23(b)(2) Permits Class-Wide Relief Even Where Individual Class Members Will Also Require Individualized Accommodations

Each plaintiff may *also* require some measure of individualized relief, in addition to class-wide relief, does not change the fact that the District's violation of IDEA and the Rehabilitation Act has injured every class member in the same manner, and that those injuries can be traced back to a set of common policies and practices by the District. Where liability turns on issues common to all plaintiffs, Rule 23(a) commonality is demonstrated. This is so even if individual plaintiffs may also be entitled to some measure of student-specific relief.

## V. THE CLASS ACTION IS AN INDISPENSABLE TOOL FOR ENFORCING CIVIL RIGHTS IN THE FACE OF SYSTEMIC VIOLATIONS

Congress and the Rules Committee did not create the class action for cases like this one by accident. Rule 23(b)(2) was added in 1966 for the express purpose of making civil rights obligations enforceable against institutions that violate them wholesale. The Advisory Committee described the new subdivision as reaching "various actions in the civil-rights field where a party is charged with discriminating unlawfully against a class, usually one whose members are incapable of specific enumeration." Fed. R. Civ. P. 23 advisory committee's note to 1966 amendment. The historical record confirms the point. See David Marcus, *Flawed but Noble: Desegregation Litigation and Its Implications for the Modern Class Action*, 63 Fla. L. Rev. 657, 695-700 (2011) (tracing Rule 23's structure to the Advisory Committee's study of desegregation practice). The drafters were not theorizing. They were responding to a concrete problem: rights that existed on paper for an entire group but could be vindicated, if at all, only one plaintiff at a time.

The form that resistance took is instructive here. School districts defending desegregation suits did not deny that the Constitution applied to them. They insisted that each child's placement was an individual matter, governed by individualized pupil assignment procedures, and therefore unsuited to class-wide adjudication. See Suzette M. Malveaux, *The Modern Class Action Rule: Its Civil Rights Roots and*

*Relevance Today*, 66 U. Kan. L. Rev. 325, 334 (2017) (describing how individualized procedures were used to force one-by-one litigation and blunt aggregate challenges). Rule 23(b)(2) was written to answer that argument. The District's position here is its lineal descendant: because each child's transportation is determined individually through the IEP process, it contends, no court may address the District's failure to deliver transportation to any of them as a class.

That argument confuses the source of the injury with the shape of the cure. Rule 23(b)(2) asks whether the defendant's challenged conduct is indivisible at its root, whether it can be lawful as to some class members and unlawful as to others, not whether every class member will receive an identical remedy at the end. Maureen Carroll, *Class Actions, Indivisibility, and Rule 23(b)(2)*, 99 B.U. L. Rev. 59, 77-87 (2019) (distinguishing endpoint indivisibility from root-cause indivisibility and arguing that the latter is appropriate for Rule 23(b)(2) cases). Where a defendant has erected a class-wide barrier, removing that barrier is precisely the relief Rule 23(b)(2) contemplates, and the individualized determinations that follow are the object of the injunction rather than an obstacle to it. *Id.* A district that cannot get children to school has not made a series of individualized judgments about transportation. It has failed to maintain a system in which such judgments can be carried out at all.

That distinction has particular force in disability rights litigation, where defendants routinely argue that the heterogeneity of disability defeats commonality. Practitioners and scholars have converged on the answer. Where the challenged practice is the public entity's own conduct, how it plans, operates, administers, and funds a service system, differences in the nature and impact of class members' disabilities do not defeat certification. Steven Schwartz & Kathryn Rucker, *The Commonality of Difference: A Framework for Obtaining Class Certification in ADA Cases After Wal-Mart*, 71 Syracuse L. Rev. 841, 863-65 (2021). The substantive law in such cases protects plaintiffs as members of a group rather than as unrelated individuals, and where it does, liability and remedy are indivisible together. David Marcus, *Groups and Rights in Institutional Reform Litigation*, 97 Notre Dame L. Rev. 619, 644-49 (2022). That is why courts have certified classes of students, prisoners, foster children, and Medicaid beneficiaries whose individual circumstances differ widely.

*Wal-Mart* did not disturb this. The empirical record since 2011 shows that public interest class actions challenging systemic government maladministration have continued to be certified. Commentators have criticized broader readings of *Wal-Mart* as importing requirements, "same injury," centrality, and litigation efficiency, with no footing in Rule 23's text or history. A. Benjamin Spencer, *Class Actions, Heightened Commonality, and Declining Access to Justice*, 93 B.U. L. Rev. 441, 476-487 (2013). It is that broader reading the District asks this Court to adopt.

The consequences of accepting it would not fall evenly. The IDEA depends almost entirely on private enforcement by parents, and that model reaches the families with the time, resources, and sophistication to invoke it. Eloise Pasachoff, *Special Education, Poverty, and the Limits of Private Enforcement*, 86 Notre Dame L. Rev. 1413, 1424-35 (2011). For families without those resources, disproportionately the families whose children depend on district transportation to reach school at all, an individual due process hearing is a barrier rather than a remedy, and requiring one child at a time to exhaust that process against a system-wide failure asks each of them to prove again the same failures of the District that have already been demonstrated. See Abbe Petuchowski, *Beyond the Point of Exhaustion: Reforming the Exhaustion Requirement to Protect Access to IDEA Rights in Juvenile Facilities*, 56 Colum. J.L. & Soc. Probs. 42 (2022). COPAA's members see the result across the country: favorable hearing decisions for individual children that cannot change the discriminatory systems.

Rule 23(b)(2) exists so that the answer to a system-wide failure can be a system-wide remedy. Congress enacted the IDEA's enforcement provisions against that settled backdrop and has left it undisturbed through repeated reauthorizations. Were the District's reading to prevail, the children least able to litigate would bear the cost of a violation that a single injunction could cure. The district court's certification order should be affirmed.

## CONCLUSION

Because class certification is necessary to remedy the widespread violations of IDEA, ADA, and Section 504 at issue here and to avoid the litany of harms to students with disabilities in DC schools, this Court should find that the district court did not abuse its discretion.

Dated: September 16, 2026

Respectfully submitted,

*s/ Ellen M. Saideman*
Ellen Marjorie Saideman
Law Office of Ellen Saideman
7 Henry Drive
Barrington, RI 02806
esaideman@yahoo.com
401-258-7276

*s/ Selene A. Almazan-Altobelli*
Selene Almazan-Altobelli
Council of Parent Attorneys and
Advocates, Inc.
P.O. Box 6767
Towson, MD 21285
selene@copaa.org
(844) 426-7224

**Certificate of Compliance with Type-Volume Limitation, Typeface Requirements and Type Style Requirements**

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

this brief contains 6,098 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Fed. R. 27 App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in Times New Roman 14-point typeface.

*s/Selene Almazan-Altobelli*
Selene Almazan-Altobelli

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the District of Columbia by using the appellate CM/ECF system on the 16th day of September 2026. I certify that all participants are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

*s/Selene Almazan-Altobelli*
Selene Almazan-Altobelli